**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

In Re:

| | | |
|---|---|---|
| Vincent A. Liberti | : | Chapter 7 |
| Laurie A. Liberti | : | |
| Debtors | : | Case No. 07-11148 |

_____

| | | |
|---|---|---|
| Vincent A. Liberti | : | |
| Laurie A. Liberti | : | |
| | : | |
| Plaintiffs/Debtors | : | |
| | : | |
| v. | : | Adv. No. 11-52322-BLS |
| | : | |
| PNC Mortgage Services, Inc. and | : | |
| PNCBank, National Association | : | |
| | : | |
| Defendants | : | |

**AMENDED COMPLAINT FOR VIOLATION OF THE DISCHARGE INJUNCTION PURSUANT TO 11 USC §524 (a)**

1. The plaintiffs, Vincent and Laurie Liberti, filed a Chapter 7 Petition on August 17, 2007.

2. At the time of filing, the Plaintiffs owned real property located at 440 Lorraine Drive, Frederica, DE 19946.

3. On Schedule D, the Plaintiffs listed two mortgages against the aforementioned property with National City Mortgage. The two mortgages were later purchased by the Defendants, PNC Bank,NA and PNC Mortgage.

4. Plaintiffs stated on their Statement of Intention that they intended to retain the real property and continue to make payments to the Defendants.

5.	In addition, the Plaintiffs signed reaffirmation agreements on the first mortgage and the second mortgage with National City Mortgage.  The Court denied these reaffirmation agreements on December 19, 2007 (Dockets #30 & #31).

6.	Debtors received their discharge on November 20, 2007 (Docket #24).

7.	After the Plaintiffs received their discharge, they decided that they could no longer afford to make the mortgage payments on the real property.  Plaintiffs contacted the Defendants and informed Defendants of their intention to stop making the payments  and to surrender the property.

8.	Following the discharge, Defendants continued their collection efforts against the Plaintiffs.

9.	First, The Defendants reported to the Plaintiffs' credit bureaus that both the first mortgage and second mortgage had approved reaffirmation agreements, the debts were not discharged in bankruptcy and that the Plaintiffs were delinquent on the two loans.

10.	The Plaintiffs repeatedly contacted the Defendants and requested that Defendants correct  the reporting status of the two mortgages.  Please see Exhibit "A" letter from Debtors to National City Mortgage dated June 16, 2009.

11.	As of February 2011, Defendant, PNC Mortgage, still had not corrected the reporting status of the Plaintiff's' mortgage.  Please see Exhibit "B" Experian Credit Reports of Vincent Liberti and Laurie Liberti.

12.	In addition to the incorrect reporting on the Plaintiffs credit reports, the Defendants continued their collection efforts against the Plaintiffs.

13.     Defendants send letters to the Debtors regarding their failure to make payments on the discharged debts.  Please see Exhibit "C" letter from PNC Mortgage to Plaintiffs dated November 25, 2009.

14.     In addition, Plaintiffs assert that the Defendants also continued collection efforts on the discharged debts by telephone.

15.     Finally, in the spring of 2011, Plaintiffs were issued Form 1099-A by PNC Mortgage for the cancellation of debt and Form 1099-A by PNC Bank, NA for the cancellation of debt. Please see Exhibit "D" Forms 1099-A from PNC Mortgage and PNC Bank NA.

16.     Plaintiffs, through counsel, contacted the Defendants regarding the issuance of the Form 1099As to the Plaintiffs.

17.     Plaintiffs' counsel again informed the Defendants of the Plaintiffs bankruptcy discharge and of the improper issuance of the Form 1099As.  Counsel was informed that Defendants were aware of the discharge; however, their system was unable to stop the issuance of the forms and they were unable to retract them.  Counsel was also told by Defendants for the Plaintiffs to ignore the Form 1099-As and not file them with their tax returns.

18.     Plaintiffs are required to file the Form 1099-As with their tax returns.  Because of the issuance of these forms Plaintiffs were required to hire a tax preparer to prepare their taxes and Plaintiffs were required to file insolvency Form 982 with their tax returns.

19.     Plaintiffs assert that they were informed by their tax preparer that there was no guarantee of the acceptance of the insolvency Form 982 by the Internal Revenue Service.

20.     The continued violation of the discharge by Defendants has caused and continues to cause the Plaintiffs actual harm.  First, the incorrect reporting on their credit bureau reports

has prevented the Plaintiffs from being able to rebuild their credit post-discharge and to give them the "fresh start" afforded under the Bankruptcy Code. Second, the continued written and telephonic collection efforts regarding these discharged debts has let to stress and aggravation for the Plaintiffs.  Plaintiffs have spent numerous hours over the past two years calling and writing to Defendants regarding the correction of the status of the two mortgages on their credit bureau reports. Finally, the Plaintiffs have been put in a precarious tax situation with the Internal Revenue Service.  The Plaintiffs have no guarantee the Internal Revenue Service will accept the insolvency Form 982 and that the Internal Revenue Service will not count the forgiven debt as income to the Plaintiffs.

WHEREFORE, the plaintiffs respectfully request that the Defendants are found in violation of the Discharge Injunction pursuant to 11 USC §524 (a) and that the Court award Plaintiffs damages and attorneys fees and this Court grant such other and further relief as it deems just and proper.

BLAKELY, GREGORY & PAPPOULIS

**DATE: 6/13/11**           **BY:** /s/ Tara A. Blakely
Tara A. Blakely
Attorney at Law
896 S. State Street
Dover, DE 19901
302-672-7217